IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TAMMY A. S.,[1]                      )
                                     )
        Petitioner,                 )
                                     )
vs.                                  )  Civil No. 17-cv-1032-CJP[2]
                                     )
COMMISSIONER OF SOCIAL               )
SECURITY,                            )
                                     )
        Respondent.                 )

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge**:

In accordance with 42 U.S.C. § 405(g), Plaintiff Tammy A. S., represented by counsel, seeks judicial review of the final agency decision denying her application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for benefits in October 2013 alleging disability beginning in June 2012. (Tr. 202-03; 204-09). She was denied benefits initially and upon reconsideration. (Tr. 143-46; 149-154). At the September 2016 evidentiary hearing before Administrative Law Judge (ALJ) Lisa Leslie, she amended her alleged onset date to September 2013. (Tr. 67; 225). After the hearing, ALJ Leslie denied her claim. (Tr. 43-57). The Appeals Council denied review making

---

[1] In keeping with the Court's recently adopted practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This matter was referred to the undersigned for final disposition upon consent of the parties, pursuant to 28 U.S.C. §636(c). See, Doc. 22.

ALJ Leslie's decision the final agency decision. (Tr. 1-7). Plaintiff exhausted administrative remedies and filed a timely complaint with this Court. (Doc. 1).

**Issues Raised by Plaintiff**

Plaintiff raises the following points:

1. The ALJ erred by failing to account for deficits of concentration in the residual functional capacity (RFC) finding; and
2. The ALJ erred in failing to elicit evidence of availability of jobs existing in significant numbers in either the region where Plaintiff lives or several regions of the country.

**Applicable Legal Standards**

To qualify for DIB or SSI benefits, a claimant must be disabled within the meaning of the applicable statutes and regulations. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).[3]

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step

three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also* Zurawski v. Halter, 245 F.3d 881, 886 (7th Cir. 2001).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.

4

See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Leslie followed the five-step analytical framework described above. She determined Plaintiff is insured through September 30, 2018,[4] and that Plaintiff has not engaged in substantial gainful activity (SGA) since June 2012. ALJ Leslie found Plaintiff had severe physical and mental impairments. Her severe mental impairments included anxiety and depression. (Tr. 45-46). ALJ Leslie determined that Plaintiff had moderate difficulties in her ability to maintain concentration, persistence, or pace. (Tr. 47).

ALJ Leslie found Plaintiff had the RFC to perform sedentary work with limitations. The mental limitations were that she was limited "…to performing simple, routine tasks not at a fast pace such as assembly line." (Tr. 48). Based on the vocational expert's testimony, ALJ Leslie concluded that Plaintiff was unable to perform any past relevant work, but that "[she was] capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 55-56).

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff and is confined to the relevant time period.

**1. Agency Forms**

Plaintiff was born in March 1970 and was forty-three years old on her

---

[4] The date last insured is relevant only to the claim for DIB.

amended alleged onset date in September 2013. (Tr. 202, 204; 67; 225). She stopped working because of her various physical and mental impairments. (Tr. 230; 240). Plaintiff had been receiving mental health treatment from WellSpring Resources since December 2012. (Tr. 245). She was taking Klonopin for anxiety and Zoloft for depression. (Tr. 242).

Plaintiff indicated that her abilities to complete tasks, concentrate, and get along with others are affected by her conditions. (Tr. 261; 286). For example, she reported an employer fired her once because she "wasn't a people person." She also tries to avoid authority figures but, if confronted, she is respectful. (Tr. 262).

As to task completion and concentration, Plaintiff can only pay attention for about ten minutes. She said in November 2013, "I can [follow written instructions] well, if [I'm] in the mood," and that she can follow spoken instructions well if she can concentrate long enough. (Tr. 261). In August 2014, she said she follows written and spoken instructions pretty well (Tr. 286), but that her "depression and anxiety…affect [her] ability to concentrate." (Tr. 281). Plaintiff further explained,

> I have major problems concentrating because [I] have thoughts going through my head, when out in public I have anxiety attacks because I think people are thinking stuff about me. I have trouble catching my breath, my chest tightens, and I feel like I am going to pass out; therefore, I have trouble completing tasks…

(Tr. 289).

Other than going to her doctor's office every couple of months and to counseling once per month, Plaintiff does not attend any place on a regular basis. (Tr. 260). She keeps to herself and does not like being around people. (Tr. 259). She says she cannot go out alone because she experiences high levels of anxiety

(Tr. 259), and has "full blown" anxiety attacks. She does not handle stress well because her blood pressure rises and she feels like her heart will "beat right out of [her] chest." (Tr. 262).

Plaintiff's days usually consist of taking her daily medications, watching television, and trying to wash dishes. She reported "hardly bath[ing] b[ecause she] can't make [herself]" and she "do[es]n't care anymore." She barely eats because she does not have an appetite, but when she does, she makes quick frozen dinners or sandwiches. (Tr. 257).

### 2. Evidentiary Hearing

Plaintiff was represented by counsel at the September 2016 hearing. Plaintiff and a vocational expert (VE), Bob Hammond, both testified under oath. (Tr. 63-85). Plaintiff testified that she takes clonazepam for anxiety and Zoloft for depression. (Tr. 75). She believes her anxiety and depression limit her ability to work. (Tr. 74; 77).

Specifically, Plaintiff's anxiety limits her ability to work because "[i]t's hard…to breathe" and she cannot be in front of or around people because she becomes upset. She then explained how her anxiety affects her daily life. Except for doctor appointments, Plaintiff stays home. Additionally, she might grocery shop once per month; her children typically go for her. Further, she does not belong to any social clubs or organizations, and she even misses family events by making excuses so she can stay home. (Tr. 73-74). She is able to drive sometimes, but she prefers to have someone with her because of her severe anxiety attacks. (Tr. 69).

As for Plaintiff's depression, Plaintiff testified that she does not like to leave her house and does not leave home alone. She said that she is a nervous person who cries a lot. Other than recently attending court, she reported that she probably had not left her house since May 2016, approximately four months before this hearing. (Tr. 77). Plaintiff further testified she had lost about ten pounds over the last month because her depression causes loss of appetite and weight. She explained that she loses weight and then gains it back before losing her appetite again; this cycle occurs every three months or so. She said that when it occurs, "I don't eat at all because I don't feel hungry, I feel like I don't want to live." (Tr. 78).

ALJ Leslie then called VE Hammond who testified that none of the individuals in ALJ Leslie's four hypotheticals could perform Plaintiff's past work positions, which include home health aide and cashier. ALJ Leslie's third hypothetical included an RFC identical to the ultimate RFC finding. VE Hammond testified that although the individual would not be able to perform Plaintiff's past work, the individual would be capable of performing three positions nationally: (1) pharmaceutical sealer at DAL; (2) circuit board screener; and (3) semiconductor bonder. (Tr. 80-83).

### 3. Medical Evidence

Plaintiff's medical records indicate that she primarily received outpatient mental health services, including case management, individual therapy sessions, and medication management, from WellSpring Resources on a regular basis throughout the relevant time period. Her anxiety and depression have been ongoing since she was eighteen years old. Plaintiff reported suffering and surviving

8

trauma as well as grappling with immense grief at different stages during her life; her anxiety and depression worsened in adulthood.[5] She explained that dealing with her family and these situations cause most of her depression and crying. (Tr. 422; 554; 771; 779-95; 765; 735).

In addition to the above circumstances, the records spanning the relevant time period indicate Plaintiff struggled with coping, avoiding negative thoughts, worrying about family members and things beyond her control, and social fears. Her stressors included her lack of income, uncertainty of housing, family and their requests for help, and an unstable relationship with her long-time paramour. (Tr. 823; 821; 816-17; 814; 805-10; 801; 793-94; 773-77; 765; 763; 761; 757; 749-55; 745; 743; 731; 728; 490; 438; 387; 377).

Frequently, Plaintiff's symptoms consisted of: (1) diminished interest in doing things; (2) feeling down, depressed, or hopeless; (3) problems sleeping; (4) lack of energy; (5) poor appetite; (6) feeling bad about herself, like she is a failure, or like she let herself or family down; (7) social withdrawal; (8) thoughts of death; and (9) trouble concentrating. (Tr. 378; 390; 422; 485-87; 490; 565-66; 569; 792; 815). Some records document Plaintiff being tearful, tense, and anxious; presenting with a sad or depressed mood and affect; or exhibiting trouble with

---

[5] Her biological father sexually abused her between the ages of five and seven; she was removed from her mother's care and lived with her grandmother until her parents divorced; and her stepfather physically and mentally abused her between the ages of nine and eighteen. As an adult, Plaintiff has suffered and survived physical and emotional abuse by her ex-spouse during their eleven year marriage, and by a paramour throughout their seven year relationship. (Tr. 382-83). Her anxiety and depression worsened when her mother had a stroke and her four-year-old nephew tragically passed away, in 2003 and 2010 respectively. Plaintiff continues to struggle with immense grief over her nephew's tragic death. (Tr. 378). Plaintiff's niece and nephews, siblings of her deceased nephew, were removed and placed in foster care, and two of her own siblings were in prison. (Tr. 422; 554; 771; 779-95; 741).

9

concentration. (Tr. 416; 438; 507; 541; 561-62; 565-67; 569; 792; 815). Plaintiff's counselor concluded that her depression and social phobia were evidenced by the above symptoms, and the counselor opined that "these symptoms also make [it] hard for her to work because she cannot hold a job…" Her symptoms affect her socially and occupationally. Additionally, the counselor added that Plaintiff's persistent fear; instant anxiety provoked when exposed; and her avoidance of social situations as often as she could "interfere[d] with her…functioning such [that she is] not even…able to get out to go to the grocery store." (Tr. 792).

Plaintiff was treated for moderate to severe recurrent depression, anxiety disorder, and social phobias. Plaintiff took clonazepam for anxiety and Zoloft for depression. (Tr. 378-96; 413-18; 549-69; 728-824). However, there were periods where Plaintiff reported little or no benefit from medication or she was without medication because she either ran out or lost her medical card resulting in the inability to see providers, obtain prescriptions, and afford her medications. (Tr. 561-62; 803).

### 4. State Agency Consultative Psychological Examination

Plaintiff met with Stephen G. Vincent, Ph.D. in January 2014. (Tr. 539-541). Throughout the examination, Plaintiff indicated problems with anxiety and depression. She reported her mental health treatment history as well as described her symptoms, feelings, and struggles related to her anxiety and depression. Dr. Vincent identified a predominant theme throughout the examination was that Plaintiff stated, "All I do is stay home and watch TV. Sometimes I clean the house

when I'm up to it, but a lot of times I have to force myself to do things. I just don't care." Dr. Vincent determined, Plaintiff's "[a]nxiety is most prominent and problematic when she ventures from home[; this is] suggestive of an agoraphobic-like component to her anxiety/panic disorder." (Tr. 539-40).

Plaintiff also reported that her depression-related moods have become progressively worse, and that she experiences poor memory, frequent forgetfulness, and difficulties staying focused on tasks and needing notes and reminders to maintain obligations and responsibilities. Examination results showed that Plaintiff was able to remember five numbers forward and four backwards. She could name three past presidents, her date of birth, and social security number without difficulty. However, she was unable to recall two of three items after a five minute interval and could not complete serial sevens from one hundred to forty-four, stating, "I can't. I just get frustrated and I can't concentrate." (Tr. 540-41).

Her "speech was underproductive, lacking inflection and intonation secondary to psychomotor retardation," and her "[m]ood was moderately to severely depressed, as was [her] affect." Plaintiff was also intermittently tearful during the examination. Her thought processes were slow and deliberate, yet logical and relevant. Her eye contact and effort were good, and she did not have difficulties relating to Dr. Vincent. (Tr. 540).

Dr. Vincent's clinical impressions were that Plaintiff had major depression, generalized anxiety disorder, and panic disorder with agoraphobia. He opined Plaintiff was cognitively intact and not psychotic. He concluded her ongoing

symptoms and signs of depression are exacerbated by unresolved grief caused by the death of her four-year-old nephew in 2010. He added that she tends to withdraw and isolate and seemed apprehensive and ill at ease. He opined Plaintiff only had a fair response to her depression and anxiety medication. (Tr. 541).

### 5. State Agency Consultants' Review

Two state agency psychologists, Lionel Hudspeth, Psy.D., and Donald Henson, Ph.D., both determined Plaintiff did not have any severe mental impairments, though they both acknowledged Plaintiff's reported symptoms and mental health treatment. (Tr. 91, 102; 118, 131).

## Analysis

Plaintiff argues that ALJ Leslie erred because the language used in the ultimate RFC and hypothetical posed to the VE failed to adequately account for her moderate deficits in maintaining concentration, persistence, or pace. (Tr. 48; 80-83). The Commissioner avoids the issue by arguing that ALJ Leslie adequately accounted for all of Plaintiff's limitations because the ultimate RFC assessment and hypothetical used the same language, and none of Plaintiff's providers assessed additional limits beyond what was included in the RFC. (Doc. 18, p. 15). For the following reasons, the Court agrees with Plaintiff.

"As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the [plaintiff's] limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is a well-established rule, and "includes any deficiencies the [plaintiff] may have in concentration, persistence, or pace." *See*, *Stewart v. Astrue*, 561 F.3d 679, 684

(7th Cir. 2009)(collecting cases). Although there is no *per se* requirement that certain language be utilized, the restriction to simple, repetitive tasks or to unskilled work is not ordinarily an adequate substitute to account for moderate concentration, persistence, or pace difficulties. *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Yurt*, 758 F.3d at 858; *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) and cases cited therein.

Here, ALJ Leslie found that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 47). She made this finding at step three of the sequential analysis when determining whether Plaintiff's mental impairments met or equaled a listed impairment. While ALJ Leslie correctly recognized that the limitations identified in the "paragraph B" criteria are not a mental RFC assessment, ALJ Leslie said, "…the following [RFC] assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." (Tr. 48). However, neither the hypothetical questions posed to the VE nor the RFC assessment adequately accounted for a moderate limitation in concentration, persistence, or pace. Rather, ALJ Leslie limited Plaintiff to "performing simple, routine tasks not at a fast pace such as assembly line." (Tr. 48; 80-83).

The Seventh Circuit Court of Appeals has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks or unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace. In *Stewart*, *supra*, a case decided in 2009, the Court observed, "The Commissioner continues to defend the ALJ's attempt to account for mental impairments by restricting the hypothetical to 'simple' tasks,

13

and we and our sister courts continue to reject the Commissioner's position." *Stewart*, 561 F.3d at 685. The Court has reaffirmed that position several times in recent years. *O'Connor-Spinner*, *supra*; *Yurt*, *supra*; *Varga*, *supra*; *Taylor v. Colvin*, 829 F.3d 799, 802 (7th Cir. 2016); *Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017).

The Commissioner essentially defends ALJ Leslie's decision by arguing she used the same language in the ultimate RFC that she used in the hypothetical posed to the VE. Yet, it is unclear how using identical language in the RFC and hypothetical automatically means that the RFC and the hypothetical adequately accounted for deficiencies. Further, ALJ Leslie's decision basically reiterated the ultimate finding: "…[Plaintiff]…retains the…concentration to perform non-fast paced (e.g., assembly line work) simple, routine tasks." (Tr. 55). No discussion was given, nor explanation provided as to how these limitations accounted for Plaintiff's moderate concentration, persistence, or pace limitations.

Additionally, the Commissioner also argues that no other providers opined Plaintiff required additional mental limitations. Regardless, ALJ Leslie herself found that the evidence supports that Plaintiff has moderate deficits in maintaining concentration, persistence, or pace, and she even said that the RFC assessment would reflect those limitations. Therefore, ALJ Leslie was required to include limitations that account for Plaintiff's moderate concentration, persistence, or pace deficits.

Further, the Commissioner acknowledged ALJ Leslie's moderate concentration, persistence, or pace finding, but neither the Commissioner nor ALJ

Leslie attempted to explain how "performing simple, routine tasks not at a fast pace such as an assembly line" accounts for Plaintiff's limitations in concentration, persistence, or pace.

The Commissioner also attempted to distinguish *O'Connor-Spinner*, *supra*, and *Yurt*, *supra*, but missed the mark. At the end of the day, these cases stand for the proposition that all of a plaintiff's limitations must be accounted for in the RFC assessment, and that the VE must be adequately apprised of those limitations. Here, ALJ Leslie failed to adequately account for Plaintiff's moderate deficiencies in maintaining concentration, persistence, or pace despite representing that the RFC would reflect that degree of limitation. Binding Seventh Circuit precedent establishes that a limitation to simple, routine tasks or to unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence, or pace, and both ALJ Leslie and the Commissioner failed to explain or show how it accounted for Plaintiff's limitations here.

Because ALJ Leslie failed to adequately account for all of Plaintiff's limitations in the hypothetical posed to the VE and in the RFC, the ultimate RFC assessment was not supported by substantial evidence. Following the line of cases discussed throughout, this case must be remanded to the Commissioner for rehearing. The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that Plaintiff is disabled or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Tammy A. S.'s application for SSI and DIB benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED**.

**DATE: September 5, 2018**

s/Clifford J. Proud
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**
